SO ORDERED.

SIGNED this 23rd day of December, 2015.



Dale L. Somers
United States Bankruptcy Judge

___

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

ELISA SALAZAR,

                DEBTOR.

CASE NO. 15-21309-13
CHAPTER 13

## OPINION DENYING CONFIRMATION OF THE DEBTOR'S CHAPTER 13 PLAN BECAUSE IT UNFAIRLY DISCRIMINATES IN FAVOR OF HER STUDENT LOAN CREDITOR

In this case, the Court must determine whether the Debtor's proposed Chapter 13 plan can be confirmed. The plan places the Debtor's unsecured student loan creditors in a special class that will receive distributions while her other unsecured creditors will receive nothing. The Debtor appears by counsel David A. Reed. Chapter 13 Trustee William H. Griffin objects to the plan, and he appears by counsel Karie L. Fahrenholz.

The Court has reviewed the relevant materials and is now ready to rule.

This case concerns a rather strange intersection in Chapter 13 practice. Congress has been sufficiently concerned about student loan debts to make them usually not dischargeable in Chapter 13, but not concerned enough to give them payment priority over other unsecured debts. Because interest on nondischargeable debts continues to accrue while a debtor is performing under a Chapter 13 plan but cannot be paid unless the debtor is paying all the unsecured claims in full, a debtor with student loan debts runs a very real risk of paying into a plan for three to five years only to find that she finishes her plan owing more on those debts than she did when she filed for bankruptcy. In this case, the Debtor hopes to reduce that risk by creating one class for student loan creditor and another class for all her other unsecured creditors, and directing to the student loan class alone all the money she pays into her plan that would otherwise be divided pro rata among all her unsecured creditors. Whether she can do that depends on whether the Court can find that her proposal does not discriminate unfairly against her non-student-loan unsecured creditors.

**Facts**

The Debtor filed her Chapter 13 bankruptcy petition on June 20, 2015. She reported owing no secured debts and no unsecured priority debts. She listed a total of $31,394.78 in general unsecured debts, including two student loan debts totaling $6,119 that she owes to the same creditor. The deadline for non-governmental creditors to file proof of their claims was October 13, 2015, but governmental creditors have until

2

Case 15-21309    Doc# 26    Filed 12/23/15    Page 2 of 14

December 21, 2015, to file theirs. By October 13, the Debtor's student loan creditor had filed a claim for $6,136.66, and four other claims (all unsecured) were filed, one for $3,845.07, one for $99.34, one for $881.19, and one for $22.03. The sum of the non-student-loan debts is $4,847.63, and the sum of all the filed claims is $10,984.29. The Court notes that none of the creditors the Debtor listed appear to be governmental units, except perhaps the student loan creditor. The Debtor reports that she owns no real property and the personal property she owns is worth $3,728. She claims exemptions for $3,606 worth of that personal property.

  The Debtor reported that she is single, has no dependents, and has gross income of $2,891 per month from her work as a machine operator. As shown on the Official Form 22C-1 she filed, her average monthly income during the 6 full months before she filed bankruptcy (her "Current Monthly Income") was also $2,891, making her annualized Current Monthly Income for the year before she filed $34,692. At the time she filed, the applicable median family income for a household of one in her home state, Kansas, was $45,980. Since the Debtor is a below-median-income debtor, her disposable income is not controlled by the Chapter 7 means test as incorporated by § 1325(b)(3).

  Along with her bankruptcy petition, the Debtor filed a proposed Chapter 13 plan. In it, she reported that she is a below-median debtor and her Applicable Commitment Period under the Bankruptcy Code is three years. She proposed that she would pay $185 per month into her plan for 36 months, providing a total of $6,660. The plan provided for distributions to pay the Debtor's attorney fee of $3,000, the Chapter 13 filing fee of $310,

3

Case 15-21309    Doc# 26    Filed 12/23/15    Page 3 of 14

and the Chapter 13 Trustee's fee of 5.25%, or $349.65 (a total of $3,659.65). Since she listed no secured or unsecured priority creditors, the Debtor expected $3,000.35 to be available for paying her unsecured creditors. But the Debtor did not propose to have that money distributed pro rata among all her unsecured creditors. Instead, she wanted to place her student loan creditor in a special class and have all the $3,000.35 distributed to it. The Trustee objected to this part of the Debtor's plan, contending it was not a permissible proposal, so the plan could not be confirmed.

In their briefs, the parties have asserted certain additional facts, mainly about the Debtor's past and present circumstances, that they contend should affect the Court's analysis here. According to the Trustee, assuming the Debtor makes all her payments timely and she incurs no additional attorney fees, her attorney's fees will not be paid until 17 months into her plan, and the first distribution to her student loan creditor will therefore not be made until the month after that. The Trustee added that the Debtor previously filed a Chapter 13 case in February 2007 and received a discharge, so she was eligible to receive a Chapter 7 discharge when she filed her current case.[1] The Trustee also asserted that during 2015, the Debtor's attorney had filed five Chapter 7 cases by the end of September and had charged a fee of $1,200 in each, as opposed to the $3,000 fee he is charging in this case. In Chapter 7 then, the Trustee concludes, the Debtor would have paid $1,200 in attorney fees plus a filing fee, and her case would likely have been

---

[1] *See* § 727(a)(9) (debtor not eligible for Chapter 7 discharge in case filed within six years of commencement of Chapter 13 case in which debtor received discharge).
4

Case 15-21309   Doc# 26   Filed 12/23/15   Page 4 of 14

completed in 90 to 120 days. Immediately after filing under Chapter 7, the Debtor could have devoted the same monthly amount she proposed to pay into her plan to paying the student loan creditor alone, and that creditor could therefore have begun to receive payments almost immediately and could be paid in full in approximately 36 months. Under the Debtor's Chapter 13 plan, by contrast, the creditor must wait for 18 months to receive its first distribution and would ultimately receive only a 48% dividend, while interest would continue to accrue, and possibly fees and late charges. Finally, the Trustee pointed out that the Debtor's student loans totaled over $10,000 in her prior case but had been reduced by approximately 40% by the time she filed this case.

In response, the Debtor does not dispute any of the Trustee's asserted facts, but contends other facts show Chapter 13 was an appropriate choice for her bankruptcy filing. She noted that fifty-nine days before she filed bankruptcy, she refinanced a loan with a creditor her attorney suspected might file a § 523 or § 727 complaint if she filed a Chapter 7 case. Her attorney suggested his effective hourly rate of compensation typically turns out to be lower for a $3,000 flat-fee Chapter 13 than it does for a $1,200 flat-fee Chapter 7 case. The Debtor's choice of Chapter 13 was also influenced by the fact she experiences recurring medical expenses she is unable to pay for in full, so she is likely to need bankruptcy again in the future, probably sooner than the eight-year delay that must pass between Chapter 7 discharges. A successful Chapter 13 now, rather than a Chapter 7, will also leave Chapter 7 available to her sooner if she should suffer a catastrophic reversal of fortune in the future. The Debtor said the reduction in her student

5

loan debts since her prior case occurred because her son (who had been the primary beneficiary of at least one of the loans) made some payments on them, and she acted as the caretaker for her son's son during 2014 and became entitled to large tax refunds that were taken by government intercepts and applied to the debts. Now, though, her grandson has resumed living with her son, and her son has stopped making payments on her student loans, so the principal is not likely to be further reduced anytime soon. The Chapter 13 automatic stay will protect her from the student loan creditor's collection efforts for the duration of her case. The Debtor added that being in Chapter 13 will provide a structure that improves her chances of sticking to her tight budget. The Debtor pointed out how difficult it would have been for her to come up with the money to pay a Chapter 7 attorney fee because she has no savings, no anticipated tax refunds, and no help from her family, and *Lamie v. United States Trustee*, 540 U.S. 526 (2004), requires the fee to be paid in full before filing bankruptcy.

**Discussion**

As the proponent of her plan, the Debtor has the burden to prove the plan may be confirmed. Because the Trustee objected, the plan may not be confirmed unless "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."[2] Under

---

[2] § 1325(b)(1)(B)

§ 1325(b)(2), "disposable income" means "current monthly income received by the debtor less amounts reasonably necessary to be expended — (A)(i) for the maintenance or support of the debtor." The Debtor's Current Monthly Income during the six months before she filed bankruptcy was the same as her actual monthly income as of the date she filed, so her Current Monthly Income minus her reasonably necessary expenses is no different than her actual income minus those expenses. Because her Current Monthly Income is less than the median income for a one-person household in Kansas, her reasonably necessary expenses are not explicitly specified by the Chapter 7 means test. While some debtors (usually above-median-income debtors) turn out to have actual discretionary income that exceeds the "disposable income" the Code declares them to have, the Debtor in this case does not.

Section 1322 of the Bankruptcy Code specifies various provisions that a Chapter 13 plan may contain. Subsection (b)(1) allows a plan to designate one or more classes of unsecured claims, but says the plan "may not discriminate unfairly against any class so designated." The Code contains no express guidance about what makes discrimination "unfair," and bankruptcy courts have broad discretion to determine whether proposed discrimination is permissible.[3] The Debtor contends it is not unfair for her plan to pay her student loan creditor all the money that is available for her unsecured creditors, but the Trustee contends it is unfair.

---

[3] *In re Knowles*, 501 B.R. 409, 415 (Bankr. D. Kan. 2013).

Courts have adopted two main tests for determining whether proposed discrimination in a Chapter 13 plan is unfair. One test, adopted by the Eighth Circuit in *Leser* and by the Ninth Circuit Bankruptcy Appellate Panel in *Wolff*, asks:

> (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.[4]

This test was roundly criticized by the First Circuit Bankruptcy Appellate Panel in *Bentley*, where the court said (among other things), "[I]nsofar as the test relies upon abstract, undefined notions of 'reasonableness,' 'legitimacy,' and 'good faith,' it fails to direct a court's analysis and instead creates a vacuum that the court itself must fill."[5] This Court must agree that the test does not appear to supply any firm guidance for determining when discrimination proposed by a Chapter 13 plan crosses the line between fairness and unfairness.

In a case that dealt specifically with a debtor-couples' effort to pay more through their Chapter 13 plan to their student loan creditors than to their other unsecured creditors, the *Bentley* court adopted the second main test for determining whether a plan discriminates unfairly. This test is not quite as simple to summarize as the *Leser-Wolff* test is.[6] Another bankruptcy judge in this District, Judge Karlin, explained the test this

---

[4]*Mickelson v. Leser (In re Leser)*, 939 F.2d 669, 672 (8th Cir. 1991); *AMFAC Distribution Corp. v. Wolff (In re Wolff)*, 22 B.R. 510, 512 (9th Cir. BAP 1982).

[5]*Inre Bentley*, 266 B.R. 229, 238 (1st Cir. 2001).

[6]*In re Bentley*, 266 B.R. 229 (1st Cir. 2001).

8

way:

> [*Bentley*] directed courts to look to "the principles and structure of Chapter 13 itself" for "the baseline against which to evaluate discriminatory provisions for fairness." Specifically, the *Bentley* court looked at (1) equality of distribution; (2) nonpriority of student loans; (3) mandatory versus optional contributions (a comparison of what the dischargeable unsecured creditors would receive in a pro rata distribution of the mandatory contribution under chapter 13); and (4) the debtor's fresh start. Under this analysis:
>
>> When a plan prescribes different treatment for two classes but, despite the differences, offers to each class benefits and burdens that are equivalent to those it would receive at the [statutory] baseline, then the discrimination is fair. On the other hand, when the discrimination alters the allocation of benefits and burdens to the detriment of one class, the discrimination is unfair and prohibited.[7]

In 2003, in *Mason*, Chief Judge Nugent considered these tests and concluded the *Bentley* test was the better one.[8] More recently, in *Stull*, he determined that even after the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which made significant changes to Chapter 13, the *Bentley* test remained the one that best reflected the aims of the Bankruptcy Code.[9] In *Stull*, the debtor had what Judge Nugent called "discretionary income" in addition to the "projected disposable income" the Code required him to pay into his plan, and the debtor proposed to use that discretionary income to pay his student loan debt in full while paying his other unsecured creditors only

---

[7]*In re Knowles*, 501 B.R. 409, 415-16 (Bankr. D. Kan. 2013) (Karlin, J.) (*quoting Bentley*, 266 B.R. at 240).

[8]300 B.R. 379, 387 (Bankr. D. Kan. 2003).

[9]489 B.R. 217, 220-21 (Bankr. D. Kan. 2013).

9

about one-half of their claims.[10]  It appears the debtor's discretionary income came about because his actual expenses were not as high as those specified in the means test that applies to above-median debtors, although the opinion did not make that completely clear. Judge Nugent noted that a below-median debtor can only have discretionary income if his or her actual monthly income is greater than the historical Current Monthly Income the Code normally requires courts to use to determine a Chapter 13 debtor's projected disposable income.[11]  The discrimination was not unfair because the debtor was paying his non-student-loan creditors all of his projected disposable income, as required by the Code, and paying more to his student loan creditor only out of additional income he had.[12]

In *Knowles*, Judge Karlin similarly concluded the *Bentley* test, rather than the *Leser-Wolff* test, more accurately reflected the statutory scheme established by Chapter 13 and the spirit of the Bankruptcy Code.[13]  Like *Stull*, *Knowles* involved above-median debtors who proposed to discriminate in favor of their student loan creditors by making direct payments from discretionary income the Bankruptcy Code did not require them to pay into their plan.[14]  Because student loans are nondischargeable and making direct

---

[10]*Id.* at 218-23.

[11]*Id.* at 222, n. 24.   An above-median Chapter 13 debtor can also have discretionary income because his or her actual monthly income exceeds his or her historical Current Monthly Income.

[12]The debtor's plan could not be confirmed, however, because it violated § 1322(b)(10) by proposing to pay interest on the student loan debt even though the other unsecured claims were not to be paid in full.

[13]501 B.R. at 415-17.

[14]*Id.* at 413-14.

10

about one-half of their claims.[10]  It appears the debtor's discretionary income came about because his actual expenses were not as high as those specified in the means test that applies to above-median debtors, although the opinion did not make that completely clear. Judge Nugent noted that a below-median debtor can only have discretionary income if his or her actual monthly income is greater than the historical Current Monthly Income the Code normally requires courts to use to determine a Chapter 13 debtor's projected disposable income.[11]  The discrimination was not unfair because the debtor was paying his non-student-loan creditors all of his projected disposable income, as required by the Code, and paying more to his student loan creditor only out of additional income he had.[12]

In *Knowles*, Judge Karlin similarly concluded the *Bentley* test, rather than the *Leser-Wolff* test, more accurately reflected the statutory scheme established by Chapter 13 and the spirit of the Bankruptcy Code.[13]  Like *Stull*, *Knowles* involved above-median debtors who proposed to discriminate in favor of their student loan creditors by making direct payments from discretionary income the Bankruptcy Code did not require them to pay into their plan.[14]  Because student loans are nondischargeable and making direct

---

[10]*Id.* at 218-23.

[11]*Id.* at 222, n. 24.   An above-median Chapter 13 debtor can also have discretionary income because his or her actual monthly income exceeds his or her historical Current Monthly Income.

[12]The debtor's plan could not be confirmed, however, because it violated § 1322(b)(10) by proposing to pay interest on the student loan debt even though the other unsecured claims were not to be paid in full.

[13]501 B.R. at 415-17.

[14]*Id.* at 413-14.

10

payments to them would reduce the chances the debtors would owe more on them after completing their plan than they did when they filed bankruptcy, and the debtors were paying the student loan creditors only from money they were not required to pay into their plan, Judge Karlin ruled the discrimination the plan called for in favor of the student loan creditors was not unfair.[15] However, she ruled the debtors could not pay more on a claim to reimburse a state agency for an overpayment of unemployment compensation benefits because that claim was not entitled to priority status, it was not nondischargeable, and the debtors presented no evidence to show they needed to pay the claim in full to further their fresh start.[16]

Under the circumstances of this case, the Court concludes the Debtor's plan unfairly discriminates against her non-student-loan creditors and therefore cannot be confirmed. Unlike the debtors in *Stull* and *Knowles*, the Debtor has no discretionary income but only the projected disposable income that § 1325(b)(1)(B) requires her to pay into her plan. The Debtor's plan fails each step of the *Bentley* test. It does not honor the Code's requirement of equality of distribution among her unsecured creditors. She does not suggest her student loans are entitled to priority under § 507(a), or that equitable subordination should be applied to her other unsecured claims under § 510(c). Her student loans are most likely excepted from discharge, but that fact does not mean they have priority over her other unsecured claims and nothing else in the Bankruptcy Code

---

[15]*Id*. at 418-21.

[16]*Id*. at 422.

justifies treating them more favorably than those other claims. The Debtor proposes to pay her student loans out of her projected disposable income, the money that § 1325(b)(1)(B) fixes as the minimum she must devote to a plan before the plan can be confirmed, and she has not suggested she has any additional income beyond her projected disposable income that she can voluntarily pay on her student loans. Although the Debtor's potential fresh start would be improved if she were allowed to direct all the unsecured creditors' share of her projected disposable income to her student loan creditor alone, a Chapter 13 fresh start does not guarantee that a debtor will emerge from Chapter 13 free from all debts, but only from those that are not entitled to priority and are not excepted from discharge.

The Debtor concedes her plan does not satisfy the Code's principle of equality of distribution among unsecured creditors of equal priority, but suggests this is okay because her student loans comprise the majority of the claims, almost 56% by the Court's calculation. She cites *In re Jackson*,[17] saying the student loan percentage here "is close to the same percentage" involved there. But as the student loans there were nearly 90% of the unsecured debts and the debtor was going to pay them as long-term debts under § 1322(b)(5), the case is distinguishable from the one before this Court. The Debtor also concedes her student loans are not entitled to priority under § 507(a). With regard to mandatory versus optional contributions, the Debtor suggests *Bentley* requires comparing

---

[17]2006 Bankr. LEXIS 4327 at *4-12 (Bankr. N.D. Ga. 2006).

what her plan would give her non-student-loan creditors to what they would receive in a Chapter 7 liquidation.  This is wrong.  *Bentley* directs the Court to consider what the unsecured creditors would receive if the Debtor's mandatory contributions to her Chapter 13 plan were distributed pro rata among all of them, not what they would receive in a Chapter 7 liquidation.  A plan like the Debtor's will probably always fail this part of the test because the plan tries to impose a distribution scheme for the mandatory contributions that is different than the scheme imposed by the Bankruptcy Code.  It tries to rearrange the priorities Congress established in Chapter 13, and that is simply not permissible.  The Debtor argues that her proposed discrimination is not unfair because without it, she will owe a larger student loan debt when she completes her plan than she did when she filed bankruptcy.  While it is true that the requirement for the Debtor's other nonpriority unsecured creditors to share pro rata with her student loan creditor in any distributions that may be available from the contributions Chapter 13 requires her to make to her plan will leave her owing a larger student loan debt if she completes her plan than she would owe if her proposal were accepted, this is a consequence of Congress's clear decision to make student loans nondischargeable, but to not make them priority claims.  Finally, the Debtor argues it is bad policy not to permit the discrimination she proposes in her plan.  While the Court feels sympathy for the points she makes, this is an argument that must be directed to Congress, which makes the laws, and not to a bankruptcy court, which can only interpret and enforce the law as Congress has made it.

13

**Conclusion**

For these reasons, the Court concludes that the discrimination proposed by the Debtor's plan is unfair, and that her plan therefore cannot be confirmed. The Court appreciates the effort the Debtor's attorney made here to cleanly present and forcefully argue the question whether a debtor in this Debtor's predicament can deal with the nondischargeable student loan problem in the manner proposed. Unfortunately, the Court is convinced that Congress has barred the relief the Debtor seeks. The Debtor is hereby given twenty-eight days to file an amended plan that removes the unfair discrimination, or to ask to have her case dismissed or converted to Chapter 7.

# # #